IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1: 21-cv-01468

**MISSION SPECIALTIES, INC.**, a Georgia non-profit corporation;

Plaintiff.

v.

**MASTER SMITH ENTERPRISES, LLC**, a Colorado limited liability company;

Defendant.

## VERIFIED COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff Mission Specialties, Inc. ("Plaintiff"), by and through counsel Messner Reeves LLP, and submits its Verified Complaint and Jury Demand, as follows:

### PARTIES

1. Plaintiff is a citizen of Georgia, as it is a non-profit corporation incorporated in Georgia and has its principal office and headquarters at 2900 Delk Road 700 PMB 292, Marietta, GA 30067-5350.

2. On knowledge, information and belief, Defendant Master Smith Enterprises, LLC ("Defendant") is a citizen of Colorado, as all of its members are domiciled in Colorado. Specifically, Defendant is presumed to have one member, Anthony Russell Smith, who is domiciled in Colorado with his primary residence located at 14103 Lexington Circle, Westminster, CO 80023. Since 2016, Mr. Smith has also formed, and presumably owns, at least seven Colorado limited liability companies.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000, as set forth herein, and the parties are citizens of different states.

4. The Court has personal jurisdiction over Defendant by virtue of the fact that Defendant is a corporation formed and essentially at home in Colorado, which arises from Defendant's regular transaction of business in Colorado, and/or from Defendant's commission of tortious conduct causing injury and damages in Colorado, including its wrongful detainment of Plaintiff's personal property located in Colorado.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides within this judicial district and because a substantial part of the events or omissions giving rise to the claims set out herein occurred within it.

## GENERAL ALLEGATIONS

6. On March 14, 2019, Plaintiff and Defendant entered into an agreement for the sale of a Centrifuge System 150L with -40C Chiller and Solvent Recovery ("Centrifuge") for the total purchase price of $794,092.67 ("Agreement"). Pursuant to the terms of the Agreement, Defendant was required to deliver the Centrifuge to Plaintiff upon payment of 90% of its purchase price and completion of its assembly.

7. Plaintiff first wired $200,000 of the Agreement's purchase price to Defendant on March 22, 2019. Plaintiff wired the remaining balance of $595,000 to Defendant on March 29, 2019, seven days later.

8. To the best of Plaintiff's knowledge, information and belief, the Centrifuge was fully assembled on or before April 24, 2019.

9. However, on April 24, 2019, Defendant requested to dismantle a chiller component from the Centrifuge to satisfy the terms and conditions of another equipment purchase agreement with an unrelated entity.

10. Plaintiff agreed to Defendant's request upon two express conditions: (1) the chiller component would be replaced in the Centrifuge in less than a month; and (2) Defendant, through a related entity, would provide Plaintiff with a certain quantity and variation of CBD based on the amount of time that it would take to fulfill the first condition. These conditions were memorialized in an email between the parties dated the same day, April 24, 2019.

11. As of May 7, 2019, Defendant had still not replaced the chiller component in the Centrifuge or otherwise delivered a fully-assembled Centrifuge to Plaintiff pursuant to the terms of the Agreement. Instead, on the same day, Defendant agreed to fully refund the entire purchase price of the Agreement to Plaintiff due to irreconciliations over the timing of the Centrifuge's delivery.

12. By July 18, 2019, Defendant had still not initiated the refund of the Agreement's purchase price to Plaintiff. Accordingly, on the same day, Plaintiff and Defendant agreed to certain refund terms for the purchase price, which were memorialized in a letter from Plaintiff to Defendant.

13. Pursuant to the refund terms, Defendant was required to first refund $400,000 of the purchase price to Plaintiff on or before July 22, 2019. Defendant was then required to refund

the balance of $394,092.67 (the "Remaining Purchase Price") on the earlier of July 29, 2019 or on the date that Defendant was able to turn the Centrifuge on for operation and resale.

14. The parties agreed that Defendant would not resell the Centrifuge to a new buyer until it had refunded the Agreement's entire purchase price to Plaintiff.

15. Defendant refunded $400,000 of the purchase price to Plaintiff on July 19, 2019.

16. However, Defendant did not refund the Remaining Purchase Price on or before July 29, 2019, which was the latest date it could comply with the refund terms.

17. Instead, without Plaintiff's permission, Defendant executed another equipment purchase agreement for the Centrifuge with an unrelated third party, Trans Capital, LLC ("Trans Capital"), despite Plaintiff's existing ownership rights.

18. In November 2019, despite Plaintiff's repeated demands for payment, Defendant informed Plaintiff that it was refusing to pay the Remaining Purchase Price until Trans Capital paid its second installment for the Centrifuge under its equipment purchase agreement, which still rightfully belonged to Plaintiff.

19. Consequently, Plaintiff and Defendant executed a promissory note ("Note") on November 7, 2019, to secure payment of the Remaining Purchase Price regardless of Defendant's additional equipment purchase agreement with Trans Capital. The Note also secured a 10% per annum interest rate, calculated monthly, on any unpaid portion of the Remaining Purchase Price starting on the same date of the Note's execution, November 7, 2019.

20. Pursuant to the terms of the Note, Defendant was to pay the principal sum of the Remaining Purchase Price, $394,092.67, as well as any accrued interest, to Plaintiff by December 9, 2019, so long as the Centrifuge was able to be turned on by that date.

21. Over the next month, Defendant provided various misleading and false representations of the Centrifuge's functionality in phone calls and text messages with Plaintiff, and/or its representatives, such as providing assurances that the final preparation of the Centrifuge would occur in the immediate future and representations that Defendant's engineers were nearly ready to turn the Centrifuge on.

22. To the best of Plaintiff's knowledge, information and belief, the Centrifuge has been able to be turned on since, at least, the execution of the Note, November 7, 2019.

23. Defendant did not pay any principal or interest amount due to Plaintiff under the Note by December 9, 2019 despite the presumed functionality of the Centrifuge and Defendant's misleading and false representations.

24. Over the next several months, Defendant continued to provide the same misleading and false representations of the Centrifuge's functionality to Plaintiff and/or its representatives.

25. In March 2020, Defendant was set to receive a $95,000 payment from Trans Capital for the Centrifuge under their equipment purchase agreement despite Plaintiff's existing ownership rights over it.

26. However, rather than pay Defendant, Trans Capital wired the $95,000 payment to Plaintiff in March 2020, presumably to satisfy a portion of the outstanding balance that Defendant owed under the Agreement and the Note. The payment reduced the principal balance under the Agreement and the Note to $299,092.67, not including any accrued interest or attorneys' fees and costs.

27. By September 2020, Plaintiff had still not received any other payments from either Defendant, or Trans Capital, for the outstanding balance under the Agreement or the Note.

28.     Accordingly, Plaintiff, again, attempted to amicably resolve the parties' dispute over the outstanding balance under the Agreement and the Note by proposing alternative payment arrangements. For instance, Plaintiff proposed an assignment of Defendant's entitlement to the remaining proceeds under its equipment purchase agreement with Trans Capital to Plaintiff given its existing ownership rights over the Centrifuge.

29.     Despite showing an initial interest in this type of alternative payment arrangement, Defendant continued to delay any resolution discussion with Plaintiff, requiring it to initiate this action.

30.     In January 2021, Plaintiff and Trans Capital visited the site where Defendant was, and still is, storing the Centrifuge, located at 5550 W. 60th Ave., Arvada, CO 80003. During the visit, Trans Capital represented to Plaintiff that the Centrifuge was operational, but that it was still awaiting a certificate of occupancy before enabling it for use.

31.     To date, despite Plaintiff's repeated requests, Defendant, or Trans Capital, have not provided Plaintiff with any updated status on the alleged certificate of occupancy.

32.     To date, the principal balance under the Note, as well as the Remaining Purchase Price under the Agreement, is $299,092.67, not including any accrued interest or attorneys' fees and costs.

## FIRST CLAIM FOR RELIEF
**(Breach of Contract - the Agreement)**

33.     Plaintiff hereby incorporates the allegations set out above as if fully stated here.

34.     Plaintiff and Defendant entered into one or more valid contracts, and specifically, but not limited to the Agreement, for the sale of the Centrifuge.

35. Plaintiff performed, in full, its obligations under the Agreement, paying the full purchase price, $794,092.67, for the Centrifuge.

36. Defendant breached its obligations under the Agreement by failing to deliver the Centrifuge to Plaintiff and subsequently failing to refund the entirety of its purchase price after attempting to resell it to Trans Capital without Plaintiff's permission.

37. As a result of Defendant's breach of the Agreement, Plaintiff has incurred damages of at least $299,092.67 in principal, in addition to significant legal costs, expenses, and interest, in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
**(Breach of Contract - the Note)**

38. Plaintiff hereby incorporates the allegations set out above as if fully stated here.

39. Plaintiff and Defendant entered into a valid and binding promissory note, the Note, to secure payment of the Remaining Purchase Price.

40. Plaintiff performed its obligations under the Note, by extending credit to Defendant to allow for final preparation of the Centrifuge for resale.

41. All conditions precedent to the Note's enforcement have been satisfied.

42. Defendant breached its obligations under the Agreement by failing to pay the Remaining Purchase Price, and any accrued interest, and legal fees, and costs to Plaintiff despite completing preparation of the Centrifuge for resale.

43. As a result of Defendant's breach of the Agreement, Plaintiff has incurred damages of at least $299,092.67, not including accrued interest or attorneys' fees or costs. Plaintiff's full amount of damages will be proven at trial.

## THIRD CLAIM FOR RELIEF
### (Replevin Pursuant to Col. R. Civ. P. 104 and Fed. R. Civ. P. 64)

44. Plaintiff hereby incorporates the allegations set out above as if fully stated here.

45. As evidenced by the Agreement and the Note, Plaintiff is the owner of the Centrifuge and has a security interest and/or equitable in it. Defendant is in default under the Agreement and the Note and, to date, owes Plaintiff at least $299,092.67, not including accrued interest or attorneys' fees and costs, which are also owing.

46. As a result of Defendant's default, Plaintiff is entitled to immediate possession of the Centrifuge given its ownership and security interest in it. Plaintiff is not required to make cover efforts for a replacement Centrifuge under the circumstances given that it is a unique and expensive piece of equipment, and Defendant has refused to refund a substantial portion of Plaintiff's money despite its prior representations and assurances.

47. Defendant came into actual or constructive possession of the Centrifuge based on its role as a seller under the Agreement.

48. Defendant has wrongfully detained the Centrifuge since the date of its first default under the Agreement and the Note.

49. The fair market value of the Centrifuge is $794,092.67.

50. To the best of Plaintiff's knowledge, information and belief, the Centrifuge is located at 5550 W. 60th Ave., Arvada, CO 80003, Defendant's fabrication facility, which Defendant owns and/or leases. Defendant's principal place of business is 14103 Lexington Circle, Westminster, CO 80023.

51. The Centrifuge has not been taken for a tax assessment or fine pursuant to statute, or seized under an execution against Plaintiff's property.

52. The Centrifuge is not subject to any known lien, assessment, or attachment, nor is the Centrifuge exempt by statute from seizure.

53. As a result of Defendant's wrongful detainment, Plaintiff requests the issuance of an Order of Possession for the Centrifuge pursuant to Col. R. Civ. P. 104(g) and Fed. R. Civ. P. 64.

### FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment)

54. Plaintiff hereby incorporates the allegations set out above as if fully stated here.

55. Defendant received a benefit from Plaintiff's payment of the Agreement's entire purchase price, $794,092.67, for the Centrifuge, as well as the credit under the Note.

56. Defendant received this benefit at Plaintiff's expense, as it failed to deliver the Centrifuge to Plaintiff or otherwise repay the outstanding balances owed to Plaintiff under the Agreement and the Note.

57. Defendant received this benefit under circumstances that would make it unjust for Defendant to retain it without commensurate compensation to Plaintiff.

58. As a result of this benefit, Plaintiff has incurred damages of at least $299,092.67. Plaintiff's full amount of damages will be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Enter judgment in its favor and against Defendant for such actual damages, compensatory damages, consequential damages, and incidental damages as this Court may deem appropriate, in an amount to be proved at trial, but that currently exceed $75,000;

b. Award to Plaintiff all reasonable attorneys' fees, costs of suit, including, without limitation, expert witness fees, deposition costs and all other costs incurred in connection with the prosecution of this action, and as allowable by statute or contract;

c. Award to Plaintiff all applicable pre-judgment and post-judgment interest on any award of damages to the extent permitted by law;

d. Issue an Order of Possession for the Centrifuge in favor of Plaintiff pursuant to Col. R. Civ. P. 104(g) and Fed. R. Civ. P. 64 and all such ancillary orders necessary to effectuate replevin of the Centrifuge; and

e. Such other and further relief as this Court may deem just and proper, or is otherwise permitted by law.

## JURY TRIAL DEMAND

Plaintiff respectfully demands a jury for all issues so triable.

Respectfully submitted this 1st day of June, 2021.

**MESSNER REEVES LLP**

*s/ Adam M. Royval*
ADAM M. ROYVAL, #43836
AUSTIN J. GEMMELL, #52753
1430 Wynkoop Street, Suite 300
Denver, Colorado 80202
Telephone: (303) 623-1800
E-mail:   aroyval@messner.com
              agemmell@messner.com

***Attorneys for Plaintiff***

## VERIFICATION

I, Ron Braund, having been duly sworn, state that I am the President of Mission Specialties, Inc., that I have read the foregoing Verified Complaint and Jury Demand and know the contents thereof, and that the same is true to the best of my knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 28th day of May, 2021.

_____
Ron Braund, as President of Mission Specialties, Inc.

STATE OF GEORIGA      )
                      ) ss.
COUNTY OF Cobb        )

SUBSCRIBED AND SWORN to before me this 28th day of May, 2021, by Ron Braund, as President of Mission Specialties, Inc.

WITNESS my hand and official seal.

My Commission Expires: 06/23/2023



_____

{04992470 / 1}                          11